

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
**T** 516.357.3000 **F** 516.357.3333

**PRISCILLA D. KAM**
PARTNER
(516) 357-3341
priscilla.kam@rivkin.com

July 5, 2023

**VIA ECF**
Honorable Allyne R. Ross
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:    Government Employees Insurance Company, et al. v. Avonora Inc. et al.**
**Docket No.: 1:23-cv-03409 (ARR)(MMH)**

Dear Judge Ross:

Plaintiffs ("Plaintiffs" or "GEICO") respectfully submit this letter motion to request an order enjoining Defendants Avonora Inc. d/b/a Avonora Pharmacy ("Avonora") and AVK RX Inc. ("AVK") (the "Pharmacy Defendants") from pursuing collection of fraudulent "No-fault" claims that are subject to GEICO's declaratory judgment claim during the pendency of the present action.[1] This includes: (i) approximately 103 arbitrations, in which the Pharmacy Defendants seek to collect more than $187,000.00 in no-fault claims submitted to GEICO (the "Arbitrations");[2] and (ii) approximately $430,350.00 in additional claims for no-fault reimbursement submitted through the Pharmacy Defendants which GEICO previously denied and which the Pharmacy Defendants will likely pursue through individual arbitrations or civil lawsuits (the "Pending Charges").[3]

All four Defendants – Avonora, AVK, and their owners Irina Aronova and Stanley Aronov – are in default. (See Dkt. Nos. 18-21 for the Clerk's Entry of Defaults entered June 23, 2023). Nevertheless, the Pharmacy Defendants continue to file and pursue expedited No-fault arbitrations and civil court suits pressing for collection on the fraudulent bills submitted to GEICO.

---

[1] Pursuant to Rule III. A of Your Honor's Individual Practices, GEICO did not request a pre-motion conference in advance of filing this letter motion; in fact, recently the Court addressed a similar letter motion in an analogous case, where the defendants defaulted, by issuing an Order to Show Cause directing the defendants to show cause why an order should not be issued staying all no-fault collection arbitrations.  See Gov't Emples. Ins. Co. v. Tenenbaum, 2023 U.S. Dist. LEXIS 56917 (E.D.N.Y. March 31, 2023). Should the Court determine a pre-motion conference is required in this case or a more comprehensive briefing is necessary, GEICO is prepared to address the Court's request in an expedited manner.

[2] A list of the Arbitrations is attached hereto as **Exhibit "A"**.  Notably, in addition to the Arbitrations, the Pharmacy Defendants seek to collective approximately $150,000.00 through litigation suits.

[3] A list of the Pending Charges is attached hereto as **Exhibit "B".**  This list does not include an additional $280,000.00 in potential exposure comprised of claims that have not yet been denied.



Honorable Allyne R. Ross, Page 2 of 5

## I.      Relevant Factual Background

Plaintiffs commenced this action to terminate a large-scale No-fault insurance fraud scheme in which Defendants submitted over $2.3 million in fraudulent pharmaceutical billing to GEICO. In sum, Defendants exploited the No-fault insurance system by targeting specific pharmaceutical products (i.e., Fraudulent Topical Pain Products), including topical pain patches classified as "unapproved" drugs by the United States Food and Drug Administration ("FDA"), that they acquired at low cost and used to submit exorbitant claims to GEICO pursuant to duplicitous prescriptions obtained through illegal kickback arrangements. See D.E. 1, passim. Specifically, GEICO's Complaint alleges the following:

(i)      Defendants participated in illegal, collusive relationships in which they steered prescribing healthcare providers ("Prescribers") and unlicensed laypersons associated with No-fault clinics ("Clinic Controllers") to direct illegal prescriptions to the Pharmacy Defendants in exchange for kickbacks and other financial incentives. See D.E. 1, ¶¶ 65-73, 77-90, 166-181. To facilitate the kickbacks, Defendants generated huge sums of cash through participation in a large-scale check-cashing and money-laundering operation, in which they exchanged for cash over $1 million in checks payable to the Pharmacy Defendants;[4] D.E. 1, ¶¶ 67-73.

(ii)     prescriptions routed to Defendants by Prescribers and/or Clinic Controllers in exchange for kickbacks and other financial incentives were forged and/or unauthorized, or altered by Defendants upon receipt[5]; D.E. 1, ¶¶ 59-60, 122-125.

(iii)    the billed-for pharmaceutical products, including products not approved by the FDA, were prescribed and dispensed pursuant to predetermined fraudulent protocols to exploit patients for financial gain, without regard for medical necessity or genuine patient care, and at the risk of patient health and safety. D.E. 1, ¶¶ 59-65, 82-90, 91-165. In fact, patients received prescriptions on dates when it appears they were not even examined or treated. D.E. 1, ¶ 126. Patients also routinely received multiple, duplicative prescriptions for Fraudulent Topical Pain Products and oral medications at their initial

---

[4] A representative sample of transaction reports reflecting Defendants' participation in the check-cashing and money-laundering operation is attached at **Exhibit "C"**.  Many of the checks were cashed by an individual named Alla Kuratova, who was previously indicted for recruiting individuals to act as phony patients in connection with an illegal prescription drug trafficking ring.  See  e.g.,  https://www.dea.gov/press-releases/2013/07/17/rx-trafficking-ring-controlled-brooklyn-medical-practices-nearly-34.

[5] Attached at **Exhibit "D"** is the affidavit of Arkam Rehman, M.D. attesting to AVK's submission of fraudulent prescriptions in his name; attached at **Exhibit "E"** is a sworn statement from Michael Alleyne, M.D. regarding prescription requirements imposed on him by Metro Pain Specialists, P.C. ("Metro Pain") – a primary source of the Pharmacy Defendants' prescriptions – and stating that prescriptions in his name were forged or altered without his consent; attached at **Exhibit "F"** is a sworn statement from Atual Chowdhury, M.D. stating his signature was misappropriated and used to sign prescriptions without his knowledge.



examinations regardless of individual symptoms, medical histories, or accident circumstances; D.E. 1, ¶ 165.

(iv)     Defendants intentionally targeted the Fraudulent Topical Pain Products because they are easily exploitable due to their low acquisition costs and high profit margins and because similar over-the-counter drugs are not covered expenses under the No-fault Laws. D.E. 1, ¶¶ 4, 57-58, 66, 90, 182-189. In fact, in the years prior to 2019, the Pharmacy Defendants billed less than $19,000.00 – all through Avonora – in Fraudulent Topical Pain Products.  By contrast, from the beginning of the scheme in 2019 through the present, Defendants submitted over $2.1 million in billing for Fraudulent Topical Pain Products (including claims to GEICO seeking $948.57 to $2,364.00 for a single tube of Diclofenac Sodium Gel 3%; $1,045.64 to $2,605.80 for a single tube of Lidocaine 5% Ointment; and $2,626.20 to $2,983.80 for a single box of unapproved Lidothol Patches). D.E. 1, ¶¶ 4, 47-55, 142, 162.

In total, Defendants submitted more than $2.3 in fraudulent pharmaceutical billing to GEICO through the Pharmacy Defendants. The Complaint seeks monetary damages from Defendants representing the payments GEICO made pursuant to Defendants' fraudulent bills for reimbursement. In addition, the Complaint seeks a judicial declaration that GEICO is not liable to pay any of the outstanding and unpaid charges submitted through the Pharmacy Defendants which includes the claims associated with the Arbitrations and the Pending Charges.

## II.     Legal Argument

Where a party seeks to stay pending no-fault insurance collection arbitrations and enjoin the filing of additional claims during the pendency of a lawsuit challenging those claims, the "preliminary injunction standard applies." Gov't Emples. Ins. Co. v. Beynin, 2021 U.S. Dist. LEXIS 57591 at *11 (E.D.N.Y. March 25, 2021). "For a preliminary injunction to issue, the party seeking injunctive relief must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Id. See also, Gov't Emples. Ins. Co. v. Tenenbaum, 2023 U.S. Dist. LEXIS 56917 at *5-6 (E.D.N.Y. March 31, 2023).   Moreover, because Defendants are in default, the Court must accept the factual allegations in GEICO's complaint as true and draw all reasonable inferences in Plaintiffs' favor.  Id.

Here, GEICO has satisfied the requirements for a preliminary injunction.

First, as this Court recently noted in Tenenbaum, courts in this district presiding over analogous cases have found that GEICO demonstrated irreparable harm sufficient to grant a stay.  Tenenbaum, 2023 U.S. Dist. LEXIS 56917 at *6. Irreparable harm exists because absent a stay of the collection proceedings, there exists a real potential for inconsistent judicial outcomes, which would undermine the federal court's jurisdiction and its decision on the declaratory judgment claim regarding the same underlying claims. See, e.g., Gov't Emples. Ins. Co. v. Tolmasov, 2022 U.S. Dist. LEXIS 79147 (E.D.N.Y. May 2, 2022);



Gov't Emples. Ins. Co. v. Wallegood, Inc._, Docket No. 1:21-cv-1986, D.E. 36 (E.D.N.Y. July 16, 2021); Beynin, supra, 2021 U.S. Dist. LEXIS 57591 at *14 - *15; Gov't Emples. Ins. Co. v. Liana Binns, N.P., No. 22-cv-1553 (NGG) (PK), Docket No. 132 (E.D.N.Y. Sept. 28, 2022) (Garaufis, N.G.); Gov't Emples. Ins. Co. v. Big Apple Med. Equipment, Inc. et al._, No. 1:20-cv-05786, Docket No. 52 (E.D.N.Y. March 25, 2021) (Chen, P.K); State Farm Mut. Auto. Ins. Co. v. Parisien, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018) (Glasser, J.); Gov't Emples. Ins. Co. v. Moshe, 2020 U.S. Dist. LEXIS 114100 (E.D.N.Y. June 29, 2020) (Block, J.). This is especially true given GEICO's allegations that the prescriptions were invalid and medically unnecessary and any findings in an underlying collection proceeding that the claims submitted were valid would conflict with a finding for declaratory relief in GEICO's favor.  Gov't Emples. Ins. Co. v. Wellmart RX, Inc., 435 F. Supp. 3d 443, 451 (E.D.N.Y. 2020); Gov't Emples. Ins. Co. v. Advanced Comprehensive Lab., LLC, 2020 U.S. Dist. LEXIS 224868 at *14 (E.D.N.Y. Dec. 1, 2020).

Second, GEICO has shown a strong likelihood of success on the merits through its detailed complaint containing specific examples of fraud and because Defendants are in default. Tenenbaum, 2023 U.S. Dist. LEXIS 56917 at *7-8 (finding that GEICO demonstrated a likelihood of success on the merits through its detailed complaint which was made stronger by the fact that defendants were in default and not defending the action).  GEICO has also shown, at minimum, a serious question going to the merits. In several cases, courts in this district have concluded that facts similar to those presented here, in which Defendants have submitted fraudulent claims for reimbursement of pharmaceuticals pursuant to invalid prescriptions obtained through illegal kickback arrangements, demonstrate a serious question going to the merits. Wellmart RX, Inc.U, 435 F. Supp. 3d at 453-455; Gov't Emples. Ins. Co. v. SMK Pharm. Corp., 2022 U.S. Dist. LEXIS 31771 at *15-18; see also, Gov't Emps. Ins. Co. v. Omar F. Ahmed, M.D._, Docket No. 1:22-cv-1679, D.E. 38, at 6 (E.D.N.Y. January 30, 2023)(in a No-fault fraud case holding that GEICO's detailed allegations and attached exhibit containing numerous examples of the alleged fraud "adequately raise a serious issue going to the merits."); Beynin, 2021 U.S. Dist. LEXIS 57591 at *18-*19 (in a No-fault fraud and declaratory judgement action, holding "that Plaintiffs have raised a serious question going to the merits [where] Plaintiffs' Amended Complaint details a complicated scheme of alleged fraudulent activity."); Moshe, 2020 U.S. Dist. LEXIS 114100 at *5 (finding GEICO's complaint, which "comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals" sufficiently demonstrates a serious questions going to the merits). Here, GEICO's Complaint, which sets forth considerable evidence that Defendants are not entitled to reimbursement of No-fault benefits for numerous independent reasons and attaches an exhibit listing more than a thousand examples of the alleged fraud, demonstrates serious questions going to the merits.

Finally, the balance of hardships militates in favor of a stay. This case is no different than other similar lawsuits where the courts in this district have concluded that the billing entity will suffer no hardship if its right to collect on its pending billing is adjudicated in a single, efficient declaratory judgment action, rather than on a piecemeal basis in multiple collection proceedings with the prospect of significantly varying outcomes. See e.g., Tenenbaum, 2023 U.S. Dist. LEXIS 56917 at *8 (in an analogous case finding the balance of hardships tips decidedly in GEICO's favor "consistent with decisions in similar cases"); Beynin, 2021 U.S. Dist. LEXIS 57591, at *26-*27 (in analogous case, finding that the balance of hardships tips decidedly in GEICO's favor because "consolidation promotes efficiency in cases like this" and, should Defendants prevail, they "will be entitled to the collection of interest" at a high rate); Wellmart RX, Inc.,



Honorable Allyne R. Ross, Page 5 of 5

---

435 F. Supp. 3d at 355 (finding that the balance of hardships "tips decidedly in favor of plaintiffs" under substantially similar circumstances); Gov't Emples Ins. Co. v. Mayzenberg, 2018 U.S. Dist. LEXIS 195890, at *22-*23 (E.D.N.Y. 2018)("[I]t is obviously more efficient and beneficial for Defendants if all of their claims are resolved in one action, rather than in hundreds of different proceedings").

Accordingly, for the reasons set forth in this letter, GEICO respectfully requests that the Court issue an order (i) staying all pending No-fault insurance collection arbitrations that have been commenced against GEICO by or on behalf Avonora or AVK, pending the disposition of GEICO's claims in this action; and (ii) enjoining Avonora and AVK, and anyone acting or purporting to act on their behalf, from commencing any further No-fault insurance collection arbitrations or litigation suits against GEICO, pending the disposition of GEICO's claims in this action.

The Court's attention to this matter is appreciated.

Respectfully submitted,

RIVKIN RADLER LLP

*Priscilla Kam*

Priscilla D. Kam